**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| INOVA HEALTH SYSTEM FOUNDATION<br><br>Plaintiff,<br><br>v.<br><br>TDC NATIONAL ASSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.1:25-cv-1813 |

# COMPLAINT

Inova Health System Foundation ("Inova"), by and through its undersigned counsel, for its Complaint against Defendant TDC National Assurance Company ("TDC" or "Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

1. This action seeks declaratory judgment and asserts a claim for breach of contract arising from TDC's refusal to provide insurance coverage to Inova for claims of religious discrimination brought by employees who were terminated after refusing the COVID-19 vaccination (the "COVID-19 Religious Claims").

2. TDC served as Inova's primary Employment Practices Liability ("EPL") insurers for the second of two key, consecutive policy years. Westchester Fire Insurance Company ("Chubb") provided primary EPL coverage for the prior policy year. EPL insurance policies, for which Inova paid TDC a substantial premium, are specifically designed to provide coverage for employment discrimination claims such as the COVID-19 Religious Claims.

3. However, despite falling within the basic insuring agreements of Chubb's and TDC's insurance policies, both insurers have disclaimed responsibility for the COVID-19 Religious Claims.

4. Instead, each of Inova's insurers has deflected responsibility onto the other, leaving Inova without the coverage it paid for—just as its losses continue to grow and its need for coverage is most critical.

5. Accordingly, Inova brings this action for breach of contract and seeks declaratory judgment as to TDC's coverage obligations as to the COVID-19 Religious Claims and to secure the coverage to which it is entitled.

## THE PARTIES

6. Inova is a Virginia corporation with its principal place of business in Virginia.

7. Upon information and belief, TDC is an Oregon corporation with its principal place of business in California. Upon information and belief, TDC is authorized to sell or write insurance in Virginia and, at all material times, has conducted and continues to conduct substantial insurance business in Virginia, including issuing a policy to Inova, a Virginia corporation with its principal place of business in Virginia.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1332 and 2201 because complete diversity exists between Inova and TDC, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and because the dispute between the parties constitutes an actual and ripe controversy.

9. This Court has jurisdiction over TDC because it is authorized either to sell or to write insurance in Virginia and, at all material times, has conducted business within Virginia,

including by writing the subject policy to Inova, which is a Virginia corporation with its principal place of business in Virginia.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the policy giving rise to the claims for relief was issued in the district.

## FACTUAL BACKGROUND

### I. The Insurance Policies

11. Inova's EPL insurance program covering the period of July 1, 2021, to July 1, 2022, is comprised of Chubb's primary policy G71147861 (the "Chubb Policy"), which provides a $10 million limit of liability, along with a series of excess policies.

12. Inova's EPL insurance program covering the period of July 1, 2022, to July 1, 2023, is comprised of TDC's primary policy MLP-00596-22-00 (the "TDC Policy"), which provides a shared $10 million limit of liability, along with a series of excess policies.

13. The relevant insuring agreement in the Chubb Policy provides, in relevant part, that Chubb "shall pay the Loss of the Insureds which the Insureds have become legally obligated to pay by reason of a Claim first made against the Insureds during the Policy Period . . . for a Wrongful Act taking place prior to the end of the Policy Period." Chubb Policy, EPL Coverage Part § I.A.

14. The Chubb Policy defines Claim, in relevant part, as

> a civil, criminal, mediation, arbitration, other alternative dispute resolution, administrative or regulatory proceeding for monetary damages or non-monetary or injunctive relief commenced by . . . service of a complaint or similar pleading;" "a civil proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by the filing of a notice of charges, investigative order or similar document;" and "a civil, criminal, administrative or regulatory investigation commenced by (a) the service upon or other receipt by any Insured Person of a written notice, investigative order, or subpoena; or (b) the service upon or other receipt by any Organization of a written notice or investigative order; from the investigating authority identifying such Insured Person as an individual or such Organization as an entity, respectively, against whom a proceeding . . . may be commenced . . . .

*Id.* § II.A.2–4.

15. The Chubb Policy provides that "[a]ll Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to be a single Claim" that is

> deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the Policy Period: (1) the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made; or (2) the time at which the Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to have been made pursuant to subsection V.B below.

*Id.* § IV.C.

16. The Chubb Policy defines Wrongful Act as "any Employment Practices Wrongful Act or Third Party Wrongful Act" but not a Peer Review Wrongful Act. *Id.* § II.U. An "Employment Practices Wrongful Act" includes, *inter alia*,

> violation of any statutory federal, state, or local law, or common law, prohibiting any kind of employment related discrimination, including discrimination based upon color, genetic information, race, religion, sexual orientation or preference, pregnancy, disability, age, national origin, or military status or disability [and] wrongful discharge or termination of employment, whether actual or constructive . . . actually or allegedly committed or attempted by the Organization, or an Employee or Executive of the Organization against an Employee or Executive of the Organization . . . .

*Id.* § II.G. It further defines "Interrelated Wrongful Acts" as "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes." *Id.* § II.L.

17. The Chubb Policy requires that the parties attempt alternative dispute resolution followed by a 60-day cooling off period before commencing a judicial proceeding. *Id.* § X. Inova and Chubb are in the process of mediating their dispute.

18. The relevant insuring agreement in the TDC Policy provides that TDC

> will pay, on your behalf, damages from any employment claim first made against you during the policy period or applicable Extended Reporting Period for an employment practices wrongful act; provided, that such employment claim is reported to us in accordance with Section VII REPORTING OF CLAIMS AND CIRCUMSTANCES of the General Terms and Conditions to this Policy.

TDC Policy, EPL Coverage Part, § I.A.

19. The TDC Policy defines "employment claim" as, *inter alia*,

> an administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of a complaint or similar document, including any such proceeding brought by or in association with the Equal Employment Opportunity Commission ("EEOC") or any similar governmental agency . . . .

*Id.* § II.G.

20. The TDC Policy contains a related claims provision that states:

> All related claims, whenever made, shall be deemed a single claim, regardless of the number of related claims; the number or identity of claimants; the number or identity of organizations and/or insured persons involved or against whom related claims have been or could be made; whether the related claims are asserted in a class action or otherwise; and the number and timing of the related claims, even if the related claims comprising such single claim were made in more than one policy period. All related claims will be treated as a single claim made when the earliest of such related claims was first made, even if such claim is made prior to the policy period, or when the earliest of such related claims is treated as having been made in accordance with paragraph (B) above, whichever is earlier . . . .

*Id.* General Terms and Conditions § VII.C. The TDC Policy defines "related claims" as

> all claims based upon or arising out of, directly or indirectly resulting from, in consequence of, in any way involving, or in any way having a common nexus of the same or related facts, circumstances, situations, transactions, events, or course of conduct, or the same or related series of facts, circumstances, situations, transactions, events or courses of conduct.

*Id.* § II.O.

21. Both the Chubb Policy and TDC Policy contain a retention of $1 million. Chubb Policy, Decl. Item C; TDC Policy, Decl. Item 5. To date, Inova's losses associated with the COVID-19 Religious Claims exceed the retention amount.

## II. Inova's COVID-19 Vaccination Policy and the Underlying Matters

22. Inova is a non-profit health organization that offers integrated health care services and operates a network of hospitals, outpatient facilities, assisted living and long-term care facilities, and other health care centers in northern Virginia.

23. In July 2021, Inova added the COVID-19 vaccine to its list of required employee vaccinations. At that time, employees were mandated to receive one of three vaccines by September 1, 2021, unless they received a medical or religious exemption. Numerous employees sought exemptions for various reasons, some of which were denied, and some of which were granted.

24. Following guidance from the Center for Medicaid and Medicare Services in November 2021, Inova modified its exemption approval process, and those who had previously been granted exemptions were asked to reapply in early 2022, yielding some denials.

25. These denials of vaccination exemption requests led in turn to employee claims for, among other things, wrongful discharge and religious discrimination. Some employees filed charges through the EEOC, while others pursued claims through its state equivalent in Virginia, the Attorney General's Office of Civil Rights ("OCR"), and others pursued formal litigation against Inova.

26. Former Inova employee Benjamin Roberts filed an action for wrongful termination and breach of contract against Inova on March 28, 2022 (the "Roberts Action"). In short, Roberts alleged that he had been wrongfully terminated on September 9, 2021, for refusing to comply with the vaccine mandate due to concerns for his health and safety, including concerns regarding the short timeframe in which the vaccines had been developed and potential side effects. The claims in his lawsuit alleged, as construed by the court, that the vaccination mandate violated the

Nuremburg Code, the Declaration of Helsinki, and the National Research Act of 1974, along with claims for wrongful termination and breach of contract. The court granted Inova's motion to dismiss all claims on March 22, 2023, which was affirmed.

27. Inova employee C.K. filed a Charge of Discrimination with the EEOC on or around June 27, 2022, resulting in a Notice of Charge of Discrimination dated June 29, 2022. The C.K. Charge alleges that Inova initially approved her permanent religious exemption from the COVID-19 vaccine mandate but later revoked the exemption and required her to re-apply and answer additional questions to determine the sincerity of her religious beliefs.

28. Though the Notice of Charge is dated June 29, 2022, Inova did not learn of the C.K. Charge until an email exchange with the EEOC on July 26, 2022, in which an EEOC representative asked Inova to take a position regarding potential mediation of that matter.

29. A physician contracted by Inova, D.K., dual-filed a charge of disability discrimination with the EEOC and OCR dated June 30, 2022, alleging wrongful termination after her hospital privileges were revoked because of a heart condition that allegedly prohibited her from receiving the COVID-19 vaccine (the "D.K. Charge"). She later filed a lawsuit in this court in December 2022.

30. According to the D.K. Charge, she had submitted a request for an exemption to the vaccine requirement based on her history of cardiac issues, which she alleged posed a significant risk to receiving the vaccine. She alleged that she was initially approved for a permanent exemption to the vaccine requirement, but Inova reversed course in November 2021, revoking her exemption and requiring that she reapply. D.K. responded by asserting that there was no lawful reason for revoking her exemption, and she was placed on administrative leave. She then allegedly submitted another request for exemption along with supporting materials from her physician in

December 2021, but Inova rejected it and advised that her relationship with Inova would end in January if she did not provide proof of vaccination. She then sought a hearing to discuss her medical condition but was ultimately terminated on the basis that Inova had revoked her hospital privileges.

31. These are merely a few examples. To date, more than seventy individual plaintiffs have brought claims against Inova arising from its COVID-19 vaccine mandate. In addition, a class action lawsuit was filed and subsequently dismissed, and is currently on appeal.

## III. The Insurance Dispute

32. Chubb and TDC have taken divergent positions regarding the COVID-19 Religious Claims, with each pointing at the other as the insurer that should be on the hook.

33. Inova timely noticed the Roberts Action, which is undisputedly covered by the Chubb Policy. According to Chubb, Inova provided notice of the Roberts Action to Chubb under the Chubb Policy on July 25, 2022, via a quarterly bordereau report dated July 22, 2022. However, other documents indicate that the Roberts Action may have been included in the prior quarterly bordereau sent on or around April 4, 2022.

34. As for the C.K. Charge, Chubb has asserted that it and the other COVID-19 Religious Claims have a common nexus of fact—alleged religious discrimination arising out of the denial or revocation of exemptions to the COVID-19 vaccine mandate—and, thus, constitute a single Claim made at the time of the C.K Charge. But Chubb further asserted that the C.K. Charge was *not* interrelated to the Roberts Action because the mere existence of the COVID-19 vaccine mandate policy, like any other employment policy, was insufficient to cause all claims involving that policy to be deemed Interrelated Wrongful Acts. Accordingly, Chubb argues that

the timing of the C.K. Charge does not relate back to the operative date of the Roberts Action (which had been timely noticed during Chubb's policy period).

35. Chubb also asserted that, to the extent the C.K. Charge was first made during and covered by its policy, it had been noticed too late. According to Chubb, it should have been included in the quarterly bordereau filed within 20 business days after the relevant quarter ended (i.e. the July 2022 bordereau report). Inova disputes Chubb's interpretation of its policy as to its notice requirement, and contends that, to the extent it is relevant, Inova did timely and properly notice the C.K. Charge in its October 2022 bordereau report.

36. To the extent that the Roberts Action and C.K. Charge are *not* interrelated under the Chubb Policy, then the C.K. Charge arose and was first made during TDC's policy period, and should be covered (along with the other COVID-19 Religious Claims) under the TDC Policy.

37. But TDC maintains that the C.K. Charge was first made on or before June 29, 2022, the date on the Notice of Charge, which predated TDC's policy period. According to TDC, the C.K. Charge was first made when the EEOC administrative proceeding was commenced by the filing of the Notice of Charge, on or before June 29, 2022, rather than when Inova *received* the C.K. Charge. And because all COVID-19 Religious Claims are related and tie back to the operative date for the C.K. Charge, all fall within the *prior* policy period—Chubb's.

38. However, TDC's position as to the C.K. Charge conflicts with its treatment of the D.K. Charge. This other discrimination charge was dated June 30, 2022, but received by Inova on July 11, after TDC's policy period began. In its coverage correspondence, TDC accepted coverage of the D.K. Charge as a claim first made against Inova during its policy period, and declared that it had been first made on July 11—the date of its receipt by Inova. In short, both the C.K. Charge and D.K. Charge were dated in late June 2022, but not received by Inova until July 2022. TDC

cannot accept coverage for the latter but reject coverage for the former given that the timing for the two matters is materially identical.

39. As it stands, both Chubb and TDC have disclaimed any responsibility to cover the COVID-19 Religious Claims under their respective policies. In short, one of Inova's EPL insurers bears coverage responsibility for the COVID-19 Religious Claims. As both have thrown their hands in the air, the Court's assistance is required to assess TDC's coverage position and, in turn, aid in determining which insurer must cover these claims.

## FIRST CAUSE OF ACTION
### Breach of Contract Against TDC

40. Inova repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

41. The TDC Policy constitutes a valid and enforceable contract between TDC and Inova.

42. Inova has paid all premiums, provided sufficient notice of all claims, and otherwise performed all obligations required of it under the TDC Policy, or has been excused from compliance by TDC's breaches, denials of coverage, or other conduct.

43. Pursuant to the terms of the TDC Policy, TDC is obligated to pay Inova's damages, including judgments, settlements, and Defense Costs, incurred on account of the COVID-19 Religious Claims.

44. The C.K. Charge was first made against Inova during the TDC Policy's policy period, namely when Inova first received notice and became aware of the C.K. Charge in July 2022.

45. The C.K. Charge and other COVID-19 Religious Claims constitute Related Claims under the terms of the TDC Policy, and thus fall within the insuring agreement of the TDC Policy, and are not otherwise excluded by any terms or conditions of the TDC Policy.

46. Though Inova has satisfied the retention of the TDC Policy, TDC has denied coverage and disclaimed any obligation to pay any damages associated with the COVID-19 Religious Claims because it has improperly construed when the C.K. Charge was first made, and TDC is thereby in breach of its obligations under the TDC Policy.

47. As a result of TDC's breach and repudiation of its obligations under the TDC Policy, Inova has suffered damages of not less than $75,000, in an amount to be determined at trial, including compensatory and consequential damages, as well as attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Declaratory Judgment Against TDC**

48. Inova repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

49. The TDC Policy constitutes a valid and enforceable contract between TDC and Inova.

50. Inova has paid all premiums, provided sufficient notice of all claims, and otherwise performed all obligations required of it under the TDC Policy, or has been excused from compliance by TDC's breaches, denials of coverage, or other conduct.

51. Pursuant to the terms of the TDC Policy, TDC is obligated to pay Inova's damages, including judgments, settlements, and Defense Costs, incurred on account of the COVID-19 Religious Claims.

52. The C.K. Charge was first made against Inova during the TDC Policy's policy period, namely when Inova first received notice and became aware of the C.K. Charge in July 2022.

53. The C.K. Charge and other COVID-19 Religious Claims constitute Related Claims under the terms of the TDC Policy, and thus fall within the insuring agreement of the TDC Policy, and coverage for the COVID-19 Religious Claims is not otherwise excluded by any terms or conditions of the TDC Policy.

54. Though Inova has satisfied the retention of the TDC Policy, TDC has denied coverage and disclaimed any obligation to pay any damages associated with the COVID-19 Religious Claims because it has improperly construed when the C.K. Charge was first made, and TDC is thereby in breach of its obligations under the TDC Policy.

55. Pursuant to 28 U.S.C. § 2201, Inova is entitled to a declaration by this Court of TDC's obligations under the TDC Policy with regard to the COVID-19 Religious Claims.

56. These facts demonstrate the existence of an actual, justiciable controversy involving specific, adverse claims regarding the interpretation and effect of the TDC Policy and the rights and obligations of the parties thereunder, which claims are ripe for adjudication.

57. A declaratory judgment regarding the competing positions as to the date on which the C.K. Charge was first made and, in turn, coverage for the COVID-19 Religious Claims will assist the parties in determining their respective rights and obligations under the TDC Policy and terminate the existing controversy between them.

58. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment in favor of Inova and against TDC, declaring that the C.K. Charge was first made during the TDC Policy's policy period and, in turn, TDC is thus obligated to pay all damages incurred in connection

with the COVID-19 Religious Claims, and, pursuant to 28 U.S.C. § 2202, order any other relief this Court deems proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, Inova prays for relief as follows:

ii. On the first cause of action, Inova requests that this Court enter judgment against TDC, awarding Inova compensatory and consequential damages, in an amount to be determined in this action, plus attorneys' fees and pre-and post-judgment interest to the extent permitted by law, including as provided for by Va. Code Ann. § 38.2-209;

iii. On the second cause of action, Inova requests that this Court enter declaratory judgment in favor of Inova and against TDC, declaring that the C.K. Charge was first made during the TDC Policy's policy period and, in turn, TDC is thus obligated to pay all damages incurred in connection with COVID-19 Religious Claims, plus an award of attorneys' fees to the extent permitted by law, including as provided for by Va. Code Ann. § 38.2-209;

v. Any other and further relief as the Court deems just and proper.

**JURY DEMAND**

Inova hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

INOVA HEALTH SYSTEM FOUNDATION,
By Counsel

/s/ *Laurie L. Kirkland*
Laurie L. Kirkland, VSB No. 75320
BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Tel: (703) 691-1235
lkirkland@bklawva.com

Robin L. Cohen (*pro hac vice* forthcoming)
Andrew Bourne (*pro hac vice* forthcoming)
Ethan M. Weinberg (*pro hac vice* forthcoming)
**COHEN ZIFFER FRENCHMAN & MCKENNA LLP**
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 584-1890
rcohen@cohenziffer.com
abourne@cohenziffer.com
eweinberg@cohenziffer.com

*Counsel for Inova Health System Foundation*